

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*50 Main Street*
*Suite 1100*
*White Plains, New York 10606*

March 31, 2023

**BY ECF & E-Mail**

The Honorable Kenneth M. Karas
United States District Judge
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

    Re:    *United States v. Ebbin Croft*, 22 Cr. 372 (KMK)

Dear Judge Karas:

    The Government respectfully submits this letter in advance of sentencing in this matter, previously scheduled for April 7, 2023, but recently rescheduled to April 3, 2023 at 4 p.m. The defendant, Ebbin Croft, previously pled guilty to one count of being a felon in possession of ammunition, in violation of Title 18, United States Code, Sections 922(g)(1) and 2. For the reasons explained below, a sentence within stipulated Guidelines range of 46 to 57 months' imprisonment would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

    **I.**    **Background**

        **A.**    **Offense Conduct**

    As set forth in the Pre-Sentence Report ("PSR"), on March 30, 2022, the defendant fired multiple shots on a partly residential street in Yonkers, New York. Specifically, in the later afternoon, the defendant, after walking west on Herriot Street, entered a deli on Herriot, followed a few seconds later by three males, who had also come from the same direction on Herriot. (PSR ¶¶ 10-11.) After a few minutes, the three males left the deli and began walking slowly east toward Hawthorne Avenue. (PSR ¶¶ 11-12.) The defendant then exited the deli and began to cross Herriot toward the rear of an apartment building (the "Apartment Building"). (PSR ¶ 12.) He can be seen on security camera footage holding a firearm in his right hand. (PSR ¶ 12.) At that point, one of the three males began to walk back in the direction of the deli and towards the defendant, reaching into the front pocket of his sweatshirt. (PSR ¶ 13.) As the male began to cross Herriot, the defendant turned and raised his gun, and after a brief pause, fired multiple shots in the direction of the male with his hand in his sweatshirt and one of the other males, who both appeared to take cover behind a gray Acura SUV. (PSR ¶ 13.) After the shooting, the defendant retreated to the rear of the Apartment Building, appearing to enter a basement apartment as the two males who had been behind the Acura SUV headed east on Herriot towards Hawthorne Avenue. (PSR ¶ 14.)

A video recording from one of several security cameras that captured the shooting is attached hereto as Exhibit A for the Court's viewing. It contains an approximately one minute clip of a larger video previously produced to the defense under Bates stamp USAO_000271. In the video, the male at whom the defendant shot can be seen holding a gun as he retreated up Herriot after the shooting by the defendant.

Later that evening on March 30, 2022, a second shooting occurred at the rear of the Apartment Building in which YPD's investigation revealed that one of the males fired multiple shots at the defendant's apartment door. (PSR ¶ 15.) The Westchester County District Attorney's Office ("WCDA") has charged that male in connection with the shooting, and the case is pending.

On April 5, 2022, the defendant voluntarily surrendered to the City of Yonkers Police Department ("YPD") in connection with the shooting on March 30, 2022. (PSR ¶ 16.) After voluntarily waiving his *Miranda* rights, the defendant admitted to possessing a firearm and to firing multiple shots at the two males on Herriot Street on March 30, 2022. (PSR ¶ 16.)

The defendant was arrested on April 5, 2022 and charged by the Westchester County District Attorney's Office ("WCDA"). The defendant was later federally arrested on June 28, 2022 and transferred into federal custody on the basis of a complaint dated June 17, 2022.

On July 11, 2022, the Government filed an indictment charging the defendant with one count of being a felon in possession of ammunition, in violation of Title 18, United States Code, Sections 922(g)(1) and 2 (the "Indictment").

### B. Plea, Pre-Sentence Report, and Guidelines Calculation

On December 2, 2022, the defendant pled guilty to the Indictment, pursuant to a plea agreement with the Government dated November 15, 2022 (the "Plea Agreement"). (PSR ¶ 2.)

In the Plea Agreement, the parties stipulated to a Guidelines range of 46 to 57 months' imprisonment (the "Stipulated Guidelines Range") based on a total offense level of 17 and 11 criminal history points, which placed the defendant in Criminal History Category V. (PSR ¶ 3.)

The Probation Office has calculated a Guidelines range consistent with that in the Plea Agreement. (PSR ¶¶ 22-41; *id.* at 21.) Based on an applicable Guidelines range of 46 to 57 months' imprisonment, the Probation Office recommends a sentence of 36 months' imprisonment, to be followed by three years' supervised release. (PSR at 21.) Probation recommends a below-Guidelines sentence of 36 months' imprisonment based on the unique circumstances surrounding the shooting, including that the defendant appeared to have been targeted by the three males, as well as based on the redemptive steps the defendant had taken since his list conviction.

The defendant seeks a sentence of 24 months' imprisonment for similar reasons as those cited by Probation as well as

U.S. v. Croft, 22 Cr. 372 (KMK)                                                              Page 3 of 5
Hon. Kenneth M. Karas
March 31, 2023

      The Government respectfully submits, however, as explained herein, that a below-Guidelines sentence, despite such cited mitigators, does not adequately account for the seriousness of the defendant's offense conduct.

## II. Discussion

### A. Applicable Law

      The Sentencing Guidelines continue to provide important guidance to sentencing courts following *United States v. Booker,* 543 U.S. 220 (2005), and *United States v. Crosby,* 397 F.3d 103 (2d Cir. 2005). Though they are advisory and not mandatory, the Sentencing Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." *Gall v. United States*, 552 U.S. 38, 46 (2007). It follows that district courts should treat the Sentencing Guidelines as the "starting point and the initial benchmark" in sentencing proceedings. *Id.* at 49; *see also Booker*, 543 U.S. at 264 (explaining that district courts must "consult" the Sentencing Guidelines and "take them into account" when sentencing). Accordingly, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall*, 552 U.S. at 49.

      After that calculation, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available"; (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants"; and (7) "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)(l)-(7). *See Gall,* 552 U.S. at 50 & n.6.

      In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant;

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

    18 U.S.C. § 3553(a)(2).

U.S. v. Croft, 22 Cr. 372 (KMK)  Page 4 of 5
Hon. Kenneth M. Karas
March 31, 2023

### B. A Sentence Within the Stipulated Guidelines Range is Appropriate

Under the above framework, the Government respectfully submits that a sentence within the Stipulated Guidelines range of 46 to 57 months' imprisonment is sufficient and not greater than necessary to comply with the purposes of sentencing, taking into account the factors in 18 U.S.C. § 3553(a).

*First*, a sentence within the Stipulated Guidelines range is appropriate in light of the serious nature of the offense and the need to promote respect for the law and to provide just punishment for the offense. Gun crimes are, of course, serious and even more so when committed by a convicted felon. As the Second Circuit has explained, "[p]ossession of a gun greatly increases one's ability to inflict harm on others and therefore involves some risk of violence" and that "[t]he prohibition of gun possession by previously convicted criminals seeks to protect society by reducing the risk of violence that may result from the possession of guns by persons inclined to crime." *United States* v. *Dillard*, 214 F.3d 88, 93 (2d Cir. 2000). Here, no one but the defendant bears responsibility for his crime. He should not have possessed ammunition, let alone a gun, and yet, he possessed both, perpetrating a shooting in a residential neighborhood. While the defendant may have feared for his safety and saw that as justification for such possession, he nevertheless engaged in gun violence in a residential setting with pedestrians on the street and cars passing by. And the notion that such possession was justified because he believed he was a target, underscores that this defendant was prepared to meet gun violence with more gun violence. A significant incarceratory sentence is warranted in light of this serious offense conduct.

*Second*, the need for specific deterrence and protection of the public from future crimes of the defendant counsel in favor of a sentence within the Stipulated Guidelines Range. The defendant has a substantial criminal history consisting of multiple convictions, including, among others, one crime of violence—a conviction for assault in the second degree, in violation of NYPL § 120.05(2), for which he was sentenced in February 2020. (PSR ¶ 39.) Moreover, the defendant's time in custody during the pendency of this case has not been without incident. In July 2022, the defendant bolted from his cell past a guard, refused to return, and then obstructed his cell window. (PSR ¶ 6.) In addition, in September 2022, the defendant was found in possession of five-inch sharpened piece of metal. (PSR ¶ 5.) While the defendant has claimed that he possessed it because a gang member had threatened his life, the defendant continues to show a preference to meet violence with violence. This pattern of behavior demonstrates a repeated disregard for the law, and the Court should impose a substantial sentence to deter the defendant from re-offending yet again upon his eventual release to further protect the public from future crimes of the defendant.

*Third*, with respect to general deterrence, a sentence within the applicable Guidelines range will send a message to other similarly situated individuals that the unlawful possession of ammunition and firearms, especially by convicted felons, has serious consequences that are commensurate with the violence and terror that such weapons inflict upon the community.

Finally, the Government is mindful of the circumstances under which the above-described shooting occurred, and that this defendant claims to have legitimately feared he was a target that day. Based on the available evidence, as produced to the defense, the Government views the defendant's fear as credible. Security camera footage in and around the deli on Herriot Street show

that the three males appeared to be following the defendant in the leadup to the shooting, that the defendant, who, on multiple occasions looked over his shoulder, knew them to be following him, and that the three males were carrying at least one firearm. Indeed, the one male later seen on the video retreating holding a gun after the shooting, previously appeared to remove something from one of the other males' backpack and place it in his sweatshirt pocket. That occurred before the shooting as the three males exited the deli, walking slowly up Herriot while looking back, appearing to check if the defendant was going to leave the deli. Further, the Government also acknowledges that the defendant contacted YPD, admitted to the shooting, expressed fear for himself and his family, and turned himself in, immediately accepted responsibility for his crime.[1] On balance, however, in light of the shooting perpetrated, and the loss of life that could have resulted from it—all against a backdrop of heighted gun violence in our communities—the Government believes that the defendant's dangerous offense conduct was nevertheless extremely serious. The defendant did not have to resort to gun violence. And, regarding his acceptance of responsibility, the Guidelines calculation, of course, already accounts for that.

### III. Conclusion

For the reasons set forth above, the Government respectfully requests that the Court impose a sentence within the Stipulated Guidelines Range of 46 to 57 months' imprisonment, as such a sentence would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

Respectfully submitted,

DAMIAN WILLIAMS  
United States Attorney

By: \_\_\_/s/_____  
Shiva H. Logarajah  
Kevin T. Sullivan  
Assistant United States Attorneys  
(914) 993-1918 / 1924

cc: Richard D. Willstatter, Esq. (by ECF & E-Mail)

---

[1]